**E-FILED on: 3/30/2011**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TINA JOHNSON,<br><br>      Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>      Defendant. | No. C-08-02558 RMW<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>**Re Docket Nos. 14 and 15** |

      Plaintiff Tina Johnson ("claimant") seeks judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her disability insurance benefits (DIB) and Supplemental Security Income (SSI) benefits. Claimant filed this action pursuant to 42 U.S.C. § 405(g). On April 14, 2011, claimant filed a motion for summary judgment and/or remand. The Commissioner opposes the motion and also moves for summary judgment. Having considered the papers submitted by the parties and the entire administrative record, the court grants the claimant's motion for remand and denies the Commissioner's cross-motion for summary judgment.

ORDER GRANTING PLAINTIFF'S FIRST MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
No. C-08-02558 RMW
JT/JLR

# I. BACKGROUND

## A.     Claimant's Education and Employment History

Claimant is a 47-year old woman who was born on March 8, 1959. Tr. 75. Claimant has a twelfth grade education and two years of post-secondary education. Tr. 104. Over the years, claimant has held various jobs. Specifically, she worked as a wireless 411 operator, a government field clerk, an office manager, a customer service representative and an assembly worker. Tr. 99. Claimant's last job was as an information 411 operator. *Id*. Generally, claimant worked in a cubicle with a computer and headset, typed all day and answered calls to provide needed information. *See* Tr. 99. Claimant was employed for four years ending in February 2004, when she claims to have been fired because of her medical related absenteeism. Tr. 98. Claimant was able to collect unemployment benefits until September 2004. Tr. 442-443. Claimant has not worked since February 14, 2004. Tr. 439-440.

## B.     Claimant's Medical History

Claimant alleges disability beginning February 25, 2004 due to severe groin and back pain; carpal tunnel on the right hand; migraines; obstructive sleep apnea; and numbness and tingling in her arms, hands, fingers and feet. Tr. 97-98. The ALJ relied on the assessments below to determine disability.

### 1. Groin and Back Pain, Carpal Tunnel

In 2002 and 2003, claimant received treatment from Dr. Susan Hsu ("Dr. Hsu"), a family practitioner, for lower back pain, right groin pain and loss of bowel and bladder function. Tr. 162-164. On February 26, 2003, claimant received a Magnetic Resonance Imaging (MRI) of her brain. Tr.166. The results of the MRI were normal. *Id*. On March 20, 2003, claimant received a MRI study of her lumber spine from Dr. Bruce Nixon per Dr. Hsu's referral. Tr. 164-165. The results indicated several areas of mild posterior bulging and osteophyte formation at T12-L1, L1-2, L4-5 and L5-S1, without significant encroachment upon the thecal sac, lateral recesses or neural foramen. *Id*. Claimant also received abdominal and pelvic ultrasounds. Tr. 169. Dr. Hsu noted that claimant had cholelithiasis and mild uterine enlargement. *Id*.

1    On January 9, 2004, claimant received a pelvic examination from Dr. Mary T. Johnson, a
2 gynecologist and obstetrician. Tr. 177.  The pelvic examination revealed that claimant's pain was
3 not associated with a groin hernia or adnexal masses. *Id*. On January 16, 2004, Dr. Kathleen
4 Kenny, a treating physician, analyzed claimant's lower right quadrant pain and determined that given
5 the long chronicity and claimant's negative MRI one year earlier, the pain was unlikely to represent
6 any serious pathology.  Tr.175.

7    On March 15, 2005, Dr. L. Neena Madireddi ("Dr. Madireddi"), a state agency orthopedist,
8 performed an orthopedic examination on claimant. Tr. 195-196.  According to the examination
9 report, Dr. Madireddi's diagnostic impression was a right upper extremity repetitive strain injury, a
10 history of right hand carpal tunnel syndrome and a history of chronic mechanical lower back pain.
11 Dr. Madireddi was of the opinion that claimant can lift and carry 20 pounds occasionally and 10
12 pounds frequently. *Id*.  Additionally, Dr. Madireddi stated that claimant can stand, walk, sit, kneel,
13 climb steps and balance without restrictions, but should avoid more than occasional stooping. *Id.*
14 Moreover, Dr. Madireddi noted that claimant should avoid more than occasional handling and
15 fingering activities with the right upper extremity. *Id*.  Finally, Dr. Madireddi assessed that claimant
16 has no restrictions in reaching, pushing and pulling with the right upper extremity and no restrictions
17 with the left upper extremity. *Id.*

18    On October 5, 2005, a state agency physician completed a residual functional capacity
19 assessment of claimant's medical records. Tr. 314-315.  The physician was of the opinion that
20 claimant had manipulative limitations in handling and fingering with the right hand. Tr. 317. The
21 physician reported that claimant could occasionally lift 20 pounds, could frequently lift 10 pounds,
22 sit and/or walk for 6 hours in an 8 hour day and was limited in pushing and pulling with the upper
23 extremities.  Tr. 315.  The physician also reported that claimant could occasionally stoop, crouch
24 and crawl, but could frequently climb, balance and kneel. Tr. 316.  No other limitations were
25 established. Tr. 317-320.

### 2. Sleep Apnea, Fibromyalgia and Migraine Headaches

On December 22, 2003, claimant underwent a nocturnal polysomnogram test for her sleep apnea. Tr. 180. Dr. Clete A. Kushida opined that the test recording was consistent with severe Obstructive Sleep Apnea Syndrome. *Id*. However, claimant subsequently lost her job and her health insurance and as a result, never followed up with treatment. Tr. 463.

On November 10, 2005, claimant underwent a workup for chest pains, but a stress echochardiogram revealed normal results. Tr. 346.

On October 2, 2006, claimant received a sleep medicine consultation. Tr. 420-421. Dr. Herb Schub's diagnostic impression was that claimant had probable significant sleep apnea, mild obesity, headaches, a history of fibromyalgia, miteral valve prolapse and hypothydrodism. *Id*. However, the history of fibromyalgia is only supported in the record by claimant's previous complaints of joint pain. *Id*. Moreover, claimant reported in a headache questionnaire that she no longer suffered from headaches because she switched birth control pills. Tr. 135-137. Rather, claimant stated that she suffered from "auras" that disrupted her vision 5-7 days of the month for 15-20 minutes at a time. *Id.*

### C.     Claimant's Application for Disability Benefits and Hearing

Claimant applied for disability insurance benefits and supplemental security income benefits on January 24, 2005. Tr. 75-80. On October 4, 2004, an assessment of claimant's residual functional capacity was made. Tr. 140-141. According to the vocational worksheet, claimant did not have the capacity for past relevant work. *Id*. An assessment of whether claimant's skills were transferable was not made. Moreover, the expert stated that claimant has the capacity to do other work and listed a school bus driver, baker, and hostess as examples. *Id*. Claimant's application was denied on May 5, 2005. A request for reconsideration was also denied on October 5, 2005. Subsequently, a hearing with an Administrative Law Judge ("ALJ") was requested.

The ALJ conducted a hearing on April 11, 2006. *Id.* At the hearing, claimant explained that she was fired due to frequent absences caused by her medical condition. Tr. 441. She said that she suffered from "auras separate from the migraines" that would cause her eyes to "flip out . . . for

ORDER GRANTING PLAINTIFF'S FIRST MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
No. C-08-02558 RMW
JT/JLR                                                         4

about 15-20 minutes." Tr. 444.  Furthermore, claimant explained that she had unexplained nausea, back problems and carpal tunnel affecting both hands. *Id*.; Tr. 470-471.  Claimant went on to discuss her back pains, for which "if [she] sit[s] too long [she] get[s] excruciating pain."  Tr. 448. Further, claimant testified that "if [she] walk[s] a few blocks, the next couple days [she's] in excruciating pain" and she "can't push a heavy vacuum in the home." *Id.*  Claimant also testified that after lifting their 10 pound puppy, she "wound up having back problems for a couple of days" and "would hunch[] over in pain." *Id*.  Claimant explained that doctors diagnosed her with a "bulging disk," "mild scoliosis," and "arthritis." *Id*.  Additionally, claimant testified that she could dress herself, get in and out of the shower, and put on her shoes and socks. *Id*.  Claimant testified that she was able to "bend over and pick" up a sock from the floor, do laundry, fold clothes, sweep the floor and wash the dishes.  Tr. 450.  However, claimant explained that she would "wind up in pain" and needed to sit and rest after those tasks. *Id*.  Claimant also testified that her sleep apnea made her feel tired when she woke up, especially for early work shifts.  Tr. 462.

Dr. Gerald Belchick ("Dr. Belchick") testified as a vocational expert regarding claimant's residual functional capacity and market expectations of absenteeism. *See* Tr. 466-475.  Specifically, Dr. Belchick classified claimant's "assembly work at a software company from '95 to '98 as unskilled at the SVP 2," which is "considered light."   Tr. 468.   Further, Dr. Belchick classified claimant's jobs as a wireless operator and a customer service clerk between 1998 to 2004 as "semi-skilled at the SVP 4, and sedentary."  Tr. 469.  Dr. Belchick noted that the rest of claimant's positions "didn't last long enough to fit the criteria" and were not considered.  Tr. 470.

Dr. Belchick testified that "if [he] were to find that the claimant had some kind of a medical problem that meant that she could not do frequent fingering and handling" then she would not be able to do her three past jobs.  Tr. 471.  Dr. Belchick further explained that "her past three jobs in the physical demands section . . . require[] frequent handling and fingering" and were "bimanual jobs . . . . mainly because of computer use."  *Id.*  In answering the ALJ's questions, Dr. Belchick also testified that it was possible for a person to stand, sit and perform as a customer service clerk and wireless

1  operator if that person had a headset. Tr. 472.  However, Dr. Belchick testified that this was not the
2  case for an assembly job. *Id.*

3      During the hearing, the ALJ asked Dr. Belchick about the concentration levels required to
4  work as a customer service clerk and wireless operator. Tr. 473.  Dr. Belchick testified that a
5  diminishment of concentration 10 percent of the time would be the absolute limit and when one gets
6  to the 10 percent level, "that's just about as for as [one] can go." *Id*.  Finally, Dr. Belchick testified
7  regarding the market expectation of abseneeism at claimant's three previous jobs. Tr. 474.  Dr.
8  Belchick explained that "one day a month is just about all anybody will tolerate; never more than
9  two. Two is the absolute maximum." *Id*.  Dr. Belchick further testified that "unskilled people are
10 more easily replaced than higher-skilled people, and [employers] will tolerate more if [one were]
11 highly skilled and highly trained." Tr. 475.

### D. The ALJ's Findings and Conclusions

13     The ALJ found that the claimant was not disabled within the meaning of the Social Security
14 Act beginning February 24, 2004 and continuing through the date of the ALJ's decision. Tr. 30.  The
15 ALJ first found that claimant met the special earnings requirement for benefits under Title II of the
16 Social Security Act at the time of the alleged disability and continues to meet those requirements.
17 Tr. 30.   The ALJ next found that claimant had not been engaged in substantial gainful activity since
18 at least February 24, 2004. Tr. 30.  Additionally, the ALJ found that claimant had severe
19 impairments consisting of back pain and carpal tunnel on the right hand, which lasted for over 12
20 months and which significantly limited her ability to perform basic work activities. Tr. 30.  The ALJ
21 also found that the medical evidence failed to establish that claimant's severe impairments met or
22 were equal to the criteria of Listing of Impairments, 20 C.F.R. § 404, Subpart P, App. 1. *See* Tr. 30;
23 20 C.F.R. § 404.1520(d).  The ALJ concluded that claimant had the residual functional capacity to
24 lift and carry 10 pounds frequently and 20 pounds occasionally; to sit, stand and walk for 6 hours in
25 an 8-hour workday; and to perform only occasional stooping, crouching, and crawling. Tr. 30.
26 Therefore, the ALJ rendered a finding that claimant was able to perform her past relevant work as a

customer service representative and a software assembly worker and that claimant was not disabled or eligible for DIB or SSI at any time provided by law. Tr. 29, 30.

## II. LEGAL STANDARD

### A. Standard for Reviewing the Commissioner's Decision

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision denying plaintiff benefits. Under section 405(g), a district court reviewing the Commissioner's decision on an application for benefits may affirm, reverse, or remand. *See Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000) (citing *Ramirez v. Shalala*, 8 F.3d 1449, 1451 (9th Cir. 1993)). However, the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. 42 U.S.C. 405(g); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Substantial evidence is more than a scintilla but less than a preponderance. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Still, the court must "consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Where evidence exists to support more than one rational interpretation, the court must defer to the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Sandgathe v. Charter*, 108 F. 3d 978, 980 (9th Cir.1997). What's more, an ALJ's finding will not be reversed for errors that are harmless. *Burch*, 400 F.3d at 679.

### B. Standard for Determining Disability

To qualify for disability benefits under the Social Security Act, the claimant must be "disabled" within the meaning of the Act. Under the Act, disability means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to last for a continuos period of not less than twelve months. *Ukolov v. Barnhart,* 420 F.3d 1002, 1004 (9th Cir. 2005). The claimant has the burden of proving that he is unable to perform past relevant work. *Id*. Where the claimant meets this burden, a prima facie case of disability is established. *Thomas v. Barnhart*, 278 F.3d 947, 955

ORDER GRANTING PLAINTIFF'S FIRST MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
No. C-08-02558 RMW
JT/JLR                                                    7

(9th Cir. 2002). The Commissioner then bears the burden of establishing that the claimant can perform other substantial gainful work that exists in the national economy. *Id.*

Social Security Disability cases are evaluated using a five-step, sequential evaluation process. 20 C.F.R. § 404.1520. In the first step, the ALJ must determine whether the claimant is presently engaged in substantially gainful activity. 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled; otherwise the evaluation proceeds to step two.

In step two, the ALJ must determine whether the claimant has an impairment or a combination of impairments that is severe. 20 C.F.R. § 404.1520(c). If the claimant's impairment is not severe, the claimant is not disabled and is not entitled to disability benefits, but if the impairment or combination of impairments is severe, the evaluation proceeds to step three.

In step three, the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the requirements of the Listing of Impairments, 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If the claimant's condition meets or exceeds the requirements of a listed impairment, the claimant is disabled. If not, the analysis proceeds to step four.

At step four, the ALJ must first determine the claimant's residual functional capacity in view of the claimant's impairments and the relevant medical and other evidence in the record, and then determine whether the claimant is able to do any work that he previously performed in the past. If the claimant can still perform work that the individual has done in the past, the claimant is not disabled. If he cannot perform the work, the evaluation proceeds to step five. 20 C.F.R. § 404.1520(e) and (f).

At step five, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled. Taking into account a claimant's age, education, vocational background, and residual functional capacity, the Commissioner must show that the claimant can perform some work that exists in significant numbers in the national economy. This can be shown either by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines ("grids"). *Tackett*, 180 F.3d at 1101; 20 C.F.R. § 404.1520(g)(1).

## III. ANALYSIS

Claimant argues that the ALJ committed reversible error in: (1) failing to adequately address the record concerning claimant's residual functional capacity for "light" work and her carpal tunnel syndrome, and (2) failing to set forth legally sufficient reasons for rejecting claimant's subjective evaluation of her injuries.

### A. Residual Functional Capacity Determination

Claimant contends that the ALJ committed reversible error by failing to correctly evaluate the record, especially regarding claimant's carpel tunnel syndrome. Specifically, claimant argues that the ALJ failed to state specific and legitimate reasons for rejecting the vocational expert's opinion concerning claimant's right hand limitations.

When evaluating medical opinions, an ALJ takes into consideration the consistency of that opinion with the record as a whole. 20 C.F.R. §416.927(d)(4). An ALJ may disregard a treating physician's opinion whether or not that opinion is contradicted. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1194-95 (9th Cir. 2004). If a treating physician's opinion is uncontradicted, then the Commissioner must have clear and convincing reasons for rejecting that opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where the treating doctor's opinion is contradicted, that opinion can be rejected for specific and legitimate reasons supported by substantial evidence. *Id.* The ALJ need not accept a treating physician's brief and conclusory opinion if it is unsupported by clinical findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir 1989). A discrepancy between a doctor's treatment notes and a doctor's later stated opinion is a clear and convincing reason for rejecting that opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Finally, a treating physician's opinion is generally afforded great weight, but is not binding with respect to the ultimate determination of disability. *Batson*, 359 F.3d at 1194-95.

Here, the state agency orthopedist, Dr. Madireddi, was of the opinion that claimant should avoid more than occasional stooping and with the right upper extremity, occasional handling and fingering activities." Tr. 196. Notably, other state agency physicians were also of the opinion that

claimant was limited in handling and fingering with her right hand. Tr. 317. However, the ALJ failed to give proper weight to these opinions. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons."). To be sure, the ALJ expressly notes those opinions, and then gave his reasons for according them little weight:

> I do not make the same finding with respect to the handling and fingering limitations Dr. Madireddi and the state agency found. Although claimant has alleged these limitations (Exhibit 6F, pp. 27, 39, 55) and been found by her treaters to suffer from both carpal tunnel syndrome and left elbow tendonitis (Exhibit 6F, pp.17, 20, 27, 39, 55), I do not see any real limitation to even occasional fingering and handling based on the claimant's proven impairment. Nerve conduction tests were normal (Exhibit 6F, p.6), with no evidence of acute or chronic neuropathic processes (Exhibit 6F, p.9). And even if such limitations were warranted for a time, this time ended in March 2005, when Dr. Madireddi found the claimant to have only "slight" tenderness to palpation (Exhibit 3F, p.3). This finding is too minimal to support a limitation on the claimant's ability to handle or finger.

But the nerve conduction test that the ALJ relies on appears to address claimant's lower back pains, not her right hand. Tr. 234-245. Even more to the point, nothing in the record suggests that the nerve conduction test sheds any light on claimant's upper extremity limitations. Taken as a whole, the record does not show a contradiction of opinions regarding claimant's upper extremities limitation. The physicians agreed that claimant had a manipulative limitation in handling and fingering with her right hand. As such, the ALJ's dismissal of Dr. Madireddi's findings is not supported by clear and convincing evidence.

      The ALJ's also inferred that even if claimant's fingering limitation was warranted, it ended in March 2005 when Dr. Madireddi found claimant to have only "slight" tenderness to palpation. But this inference is not supported by the medical evidence. The ALJ relies on Dr. Madireddi's March 19, 2005 finding that claimant experienced "[s]light tenderness on palpation of right lateral epicondyle and over the volar wrist." Tr. 196. Yet, the ALJ's inference is directly contradicted in the very same report, where Dr. Madireddi notes that claimant "should avoid more than . . . occasional handling and fingering activities" with the upper extremity. Tr. 196. There is no evidence to suggest that Dr. Madireddi's findings expressed in the same report are inconsistent. What's more, the ALJ does not set out adequate evidentiary support for his interpretation of the

ORDER GRANTING PLAINTIFF'S FIRST MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
No. C-08-02558 RMW
JT/JLR          10

medical evidence. *See Tackett v. Apfel,* 180 F.3d 1094, 1102 (9th Cir. 1999) (reversing the ALJ because rejection of treating and examining physician's opinions was based on unsupported speculation drawn by the ALJ from testimony of a road trip claimant took to California). At bottom, the ALJ had no clear and convincing reasons for disregarding the uncontradicted opinions of claimant's treating physicians.

Claimant also argues that the ALJ erred in ignoring Dr. Belchick's opinion as a vocational expert. Dr. Belchick testified that claimant's "past jobs in the physical demands section of the DOT, require[] frequent handling and frequent fingering." Tr. 471. Moreover, Dr. Belchick testified that all three jobs were "bimanual jobs" requiring the function of both hands. Tr. 472. Critically, Dr. Belchick noted that if claimant were limited to only occasional fingering and handling with her right hand, she would be unable to perform her past three jobs. Tr. 471. The uncontradicted opinions of claimant's physicians appear to show that she has these very limitations. Consequently, the ALJ's determination that claimant can perform her past relevant work is not supported by substantial evidence in the record as a whole.

**B. Assessing Claimant's Credibility.**

Claimant also contends that the ALJ erred in failing to set forth legally sufficient reasons for rejecting her subjective complaint. The Commissioner, in turn, contends that the ALJ's findings were supported by substantial evidence and that the ALJ gave valid and specific reasons for rejecting claimant's testimony. In addition to the ALJ's stated reasons, the Commissioner offers additional evidence supporting the ALJ's decision. Specifically, the Commissioner asserts that the ALJ reasonably considered the evidence of claimant's inconsistent statements in determining credibility, and points to several areas where he contends that claimant's statements were inconsistent. Opp. at 3-4. The Commissioner also argues that claimant's ability to perform a wide range of daily activities is consistent with the ALJ's finding that claimant is not disabled. Opp. at 4.

In order to assess whether the ALJ made a proper credibility determination, the court must review the reasons stated by the ALJ, under the applicable legal standard.

### 1. Standard for Assessing Subjective Symptoms of Pain

Pain is a completely subjective phenomenon which cannot be objectively verified or measured, and the level of pain caused by an impairment varies significantly among individuals depending on their pain threshold and stamina. *Bunnell v. Sullivan*, 947 F.2d 341, 347 (9th Cir. 1991) (en banc). Accordingly, in a case involving subjective symptoms, the ALJ must engage in a two-step analysis. First, the claimant must produce objective medical evidence of an underlying impairment or combination of impairments which could reasonably be expected to produce pain or other symptoms alleged. *Cotton v. Bowen*, 799 F.2d 1403, 1407-08 (9th Cir. 1986); *Bunnell*, 947 F.2d at 343; *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Next, absent evidence of malingering, the ALJ may reject claimant's testimony about the severity of the symptoms only by offering specific, clear and convincing reasons. *Smolen*, 80 F.3d at 1282; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ may not reject claimant's testimony regarding the severity of the symptoms simply because there is no showing that the impairment could reasonably produce the degree of symptom alleged. *Smolen*, 80 F.3d at 1282; 20 C.F.R. §§ 404.1529(c)(2) and 416.929(c)(2). The ALJ may, however, consider the medical evidence as well as other factors, including a claimant's daily activities; the location, duration, frequency and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; treatment other than medication; measures used to relieve symptoms and functional limitations caused by the symptoms. *Smolen*, 80 F.3d at 1284; 20 C.F.R. §404.1529(c)(3).

Although the ALJ is not required to accept a claimant's subjective testimony regarding the severity and persistence of pain and other symptoms, the Ninth Circuit has repeatedly instructed that:

> If there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting that the claimant was malingering, the Secretary's reason for rejecting the claimant's testimony must be "clear and convincing" and supported by specific findings. It's not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible. He must either accept [claimant's] testimony or make specific findings rejecting it.

ORDER GRANTING PLAINTIFF'S FIRST MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
No. C-08-02558 RMW
JT/JLR                                          12

*Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (internal citations and quotations omitted). The ALJ is "required to point to specific facts in the record which demonstrate that [claimant] is in less pain than she claims." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), *quoting Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). The Ninth Circuit has explained why the findings must be specific: the ALJ's "findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell*, 947 F.2d 341 at 345-45 (internal quotation omitted).

**2. The ALJ's findings**

Here, the ALJ found that claimant's allegations are unsupported by objective medical evidence. Moreover, the ALJ found that claimant's and her boyfriend's testimonies regarding the effects of claimant's symptoms were not entirely credible. Tr. 28-29. The ALJ noted:

> It is this lack of objective medical evidence that causes me to question the claimant's allegations that she can perform no work. Unfortunately, the claimant's testimony at the hearing does little to assuage my concerns. Although the claimant states that she cannot sit or walk for long, she testified that she frequently spends her day home alone, sitting and watching television and standing and walking to do her household chores, including laundry sweeping, and necessary driving. The claimant testified that she is able to perform her personal grooming, including dressing and showering, and she can bend down to put her shoes and socks. The claimant also testified at the hearing that after she does her laundry, her left wrist is sore the next day, but her records reference her carpal tunnel syndrome in her *right* wrist, not her left. The absence of clarity in that should be a straight forward issue causes me to view the claimant's other claims with much suspicion.

Tr. 28-29.

The ALJ concluded that claimant's daily activities involved physical activities that were inconsistent with her claims of pain. Tr. 28. The Ninth Circuit has "repeatedly asserted that the mere fact that a [claimant] has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *See Veritgan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). But here, the ALJ supported his conclusion with additional facts. Notably, claimant also testified of pain in her left

1 wrist while performing household chores, even though the rest of the medical record only addresses
2 pain in her right hand.  Moreover, the ALJ noted the boyfriend's testimony that the more treatment
3 claimant received, the worse claimant's symptoms became.  Tr. 29.  The ALJ's stated reasons
4 constitute a "specific, clear and convincing" reason for disregarding claimant's testimony.

5 The ALJ appears to have assumed that claimant's carpal tunnel syndrome did not preclude
6 her from doing her past relevant work based solely upon her subjective reporting, which he found
7 unreliable.  However, it appears that Dr. Madireddi specifically determined that claimant has
8 fingering limitations that, according to Dr. Belchick, prevent her from doing her past work.
9 Accordingly, there remains a substantial question as to whether or not claimant is actually disabled.

### C. The Availability of Suitable Jobs in the National Economy

Although the record raises a substantial question as to whether or not claimant is disabled, the medical evidence appears to be in agreement that claimant cannot perform past work because of fingering problems**.**   If claimant is unable to perform her past work, the burden shifts to the ALJ to show that claimant can perform some other work that exists in "significant numbers" in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience.  20 CFR § 404.1560(b)(3).  In this case, the ALJ did not make a finding as to whether claimant had skills transferable to other jobs in the national economy because he determined that claimant could perform her past relevant work as a customer service representative and software assembly worker.  Tr. 29.  An ALJ can find that a claimant's acquired skills are transferable to other jobs "when the skilled or semi-skilled work activities the claimant did in past work can be used to meet the requirements of skills or semi-skilled work activities of other jobs or kinds of work.  This depends largely on the similarity of occupational significant work activities among different jobs." *Vertigan,* 260 3d. at 1052 (citing 20 C.F.R. § 404.1568(d)(1)). According to the vocational expert, claimant's past jobs were semi-skilled and unskilled.  Tr. 469.  However, the ALJ failed to ask the vocational expert whether skills from claimant's past jobs were transferable to alterative work in the economy.  Thus, taking into account claimant's age, education, vocational background, and residual functional capacity, the ALJ must show that the claimant can perform some work that exists in significant numbers in the national economy.  This can be shown either by the testimony of a

ORDER GRANTING PLAINTIFF'S FIRST MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
No. C-08-02558 RMW
JT/JLR                                        14

vocational expert or by reference to the Medical-Vocational Guidelines ("grids").  *Tackett*, 180 F.3d at 1101; 20 C.F.R. § 404.1520(g)(1).

On remand, the ALJ is not precluded from considering the basis of the fingering limitation diagnoses.  However, if the ALJ determines that there is a limitation that would prevent claimant from doing her past relevant work, the ALJ must show that claimant can perform some other work that exists in "significant numbers" in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience.

**IV. ORDER**

For the foregoing reasons, this court grants claimant's motion and hereby remands claimant's case to the Social Security Administration for reconsideration of the basis of claimant's fingering limitation.  If the ALJ determines that there is a limitation that would prevent claimant from doing her past relevant work, the ALJ must consider whether claimant can perform other gainful work that exists in the national economy.

DATED:      3/30/2011                                                                  *Ronald M Whyte*

                                                                             RONALD M. WHYTE
                                                                             United States District Judge